1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

RACHELAN HOLLMAN O'BRIEN,                    NO.  C14-191-RAJ-JPD

9
                          Plaintiff,

10
        v.                                   REPORT AND
                                             RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12
                          Defendant.

13

14          Plaintiff Rachelan Hollman O'Brien appeals the final decision of the Commissioner of

15   the Social Security Administration ("Commissioner") which denied her applications for

16   Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles

17   II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing

18   before an administrative law judge ("ALJ").  For the reasons set forth below, the Court

19   recommends that the Commissioner's final decision be REVERSED and the matter be

20   REMANDED for further proceedings under sentence four of 42 U.S.C. § 405(g).

21                          I.        FACTS AND PROCEDURAL HISTORY

22          Plaintiff is 39 years old and has a 12th grade education.  Administrative Record ("AR")

23   at 31.  Her past work experience includes employment as a home attendant, cook, hand

24   packager, cashier, mail carrier and medical assistant.  *Id.*

REPORT AND RECOMMENDATION - 1

On June 30, 2011, plaintiff applied for SSI and DIB benefits alleging an onset date of September 1, 2002.  AR at 18.  The Commissioner denied plaintiff's claim initially and on reconsideration.  *Id.*  Plaintiff thereafter requested a hearing before an ALJ which took place on September 24, 2012.  *Id.*  At the hearing, plaintiff amended her alleged onset date to April 1, 2009.  *Id.*  By letter dated September 28, 2012, plaintiff requested the ALJ to arrange a "consultative psychological evaluation."  The ALJ denied the request finding there was "no objective evidence that the claimant suffers from a condition that has not been addressed in the decision"; the ALJ also denied the request on the grounds the record contained sufficient medical evidence to render an opinion about plaintiff's mental conditions.  *Id.*

On October 19, 2012, the ALJ issued a written decision finding plaintiff not disabled based on her finding there were specific jobs existing in significant numbers in the national economy that plaintiff could perform.  AR at 32-33.  On December 9, 2013, the Appeals Council denied plaintiff's appeal of the ALJ's decision, AR at 8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On February 9, 2014, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and

1   is such relevant evidence as a reasonable mind might accept as adequate to support a

2   conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d

3   747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving

4   conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*

5   *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the

6   record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of

7   the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the

8   evidence is susceptible to more than one rational interpretation, it is the Commissioner's

9   conclusion that must be upheld. *Id.*

10      The Court may direct an award of benefits where "the record has been fully developed

11   and further administrative proceedings would serve no useful purpose." *McCartey v.*

12   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

13   (9th Cir. 1996)). The Court may find that this occurs when:

14      (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
        claimant's evidence; (2) there are no outstanding issues that must be resolved
15      before a determination of disability can be made; and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled if he
16      considered the claimant's evidence.

17   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

18   erroneously rejected evidence may be credited when all three elements are met).

19                    IV.    EVALUATING DISABILITY

20      As the claimant, Ms. O'Brien bears the burden of proving that she is disabled within

21   the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

22   Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

23   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

24   expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On October 19, 2012, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since April 1, 2009, the alleged onset date.

3.    The claimant has the following severe impairments: anxiety disorder, affective disorder, degenerative joint disease of the knees, and obesity.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for two hours in an eight-hour workday with normal breaks. She can sit for six hours in an eight-hour workday with normal breaks. The claimant can frequently operate foot controls and push and/or pull with the bilateral lower extremities. She can occasionally kneel, crouch,

REPORT AND RECOMMENDATION - 5

crawl and climb ramps, stairs, ladders, ropes, and scaffolds.  The claimant can frequently balance and stoop.  She should avoid concentrated exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights.  The claimant can work in environments classified as very quiet to loud noise intensity level as those terms are defined in the Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles (SCO).  She can understand, remember and carry out simple as well as complex instructions.  The claimant can accept instructions from supervisors and interact appropriately with both supervisors and coworkers.  The claimant requires work where interaction with the general  public is not an essential element of the job such as in a sales position.  However, incidental contact with the general public is not precluded.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2009, through the date of this decision.

AR at 21-32.

VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.  Whether the ALJ erred in failing to properly consider the opinions of the examining providers in the record and to provide adequate explanation for not according those opinions greater weight.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

2.      Whether substantial evidence supports the ALJ's conclusion that the Plaintiff has a residual functioning capacity to perform light work, but with the ability to stand two hours in an eight hour workday.

3.      Whether the ALJ erred in failing to comply with the rules in determining whether the Plaintiff's mental health impairments met a listing.

Dkt. 16 at 1-2.

## VII.    DISCUSSION

A.    <u>The ALJ's Evaluation of the Opinions of Dr. Gaffield and ARNP Chapman</u>

Plaintiff contends the ALJ erred in rejecting the opinions of examining physician Gary Gaffield, D.O. and treating provider Grace Grime Chapman, FNP,[3] that plaintiff is limited to standing or walking less than two hours a day.  Dkt. 16 at 3.

1.      *Gary Gaffield, D.O.*

In November, 2011, Dr. Gaffield performed a physical evaluation of plaintiff and diagnosed plaintiff with bilateral knee pain with weakness, migraines by history and low back pain "secondary to knee status."  AR at 456-60.  Dr. Gaffield opined, among other things, that plaintiff could walk or stand less than two hours due to her knee condition and obesity; she could sit for eight hours in a work day; she could carry or lift no more than 20 pounds occasionally and 10 pounds frequently and she should avoid postural activities but had no manipulative restrictions.  *Id.*  The ALJ assigned great weight to these opinions, excepting the doctor's opinion that plaintiff could stand or walk for less than two hours.  AR at 29.

The ALJ rejected Dr. Gaffield's opinion about plaintiff's standing ability for four reasons.  The ALJ first found the opinion was inconsistent with the opinions of nonexamining doctors Dale Thuline, M.D., and Elizabeth St. Louis, M.D.  *Id.*  Alone, this is an invalid ground because the opinion of a nonexamining physician cannot by itself constitute substantial

---

[3] Family Nurse Practitioner.

REPORT AND RECOMMENDATION - 7

1   evidence that justifies the rejection of the opinion of an examining physician. *Pitzer v.*

2   *Sullivan*, 908 F.2d 502, 506, n. 4; *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

3          Second, the ALJ rejected Dr. Gaffield's opinion on the grounds it was inconsistent with

4   "the longitudinal medical record." AR at 29.  This is a conclusory statement and thus legally

5   insufficient to reject Dr. Gaffield's opinions. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

6   Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or

7   are contrary to the preponderant conclusions mandated by the objective findings does not

8   achieve the level of specificity our prior cases have required, even when the objective factors

9   are listed seriatim.").

10          Additionally, the longitudinal medical record is not inconsistent with Dr. Gaffield's

11   opinions about plaintiff's standing abilities.  The medical record shows plaintiff has long

12   suffered from significant knee problems.  In 2010, plaintiff's physical therapist, Bob Matekel,

13   PT, noted plaintiff had chronic knee pain.  AR at 374.  He further reported plaintiff was unable

14   to exercise due to knee pain; that stairs, kneeling and squatting aggravated her knee; and that

15   she was "unable to run and limited walking due to pain." AR at 476.  In November 2010,

16   plaintiff's treating nurse practitioner noted plaintiff "c/o swollen and painful knees x6 months."

17   AR at 397.  In 2011, plaintiff was seen at the University of Washington Medical Center.  The

18   staff noted plaintiff had chronic knee pain since 2009 that was getting gradually worse and that

19   the pain was worse with walking, running, bending and kneeling.  AR at 400.  The medical

20   staff further noted that an MRI of the right knee taken in November 2010 showed "moderately

21   severe multicompartment degenerative changes worse in the medial and patellofemoral

22   compartments. Large joint effusion"; the MRI showed in the left knee moderate

23   multicompartment degernative change and large joint effusion. *Id.*

24

REPORT AND RECOMMENDATION - 8

1    Plaintiff's treatment records also do not contain specific opinions or findings that

2    contradict Dr. Gaffield's opinion about plaintiff's ability to stand.  Rather, the treatment record

3    is silent as to the exact standing and walking limitation flowing from plaintiff's knee

4    impairment.  Accordingly, the Court concludes that substantial evidence does not support the

5    ALJ's finding that Dr. Gaffield's opinion is inconsistent with the longitudinal medical record.

6    Third, the ALJ rejected Dr. Gaffield's opinions as inconsistent with "claimant's ability

7    to care for toddlers."  AR at 29.  This conclusory finding is insufficient to reject the doctor's

8    opinion.  To reject Dr. Gaffield's opinion, the ALJ was required to set out a detailed and

9    thorough summary of the facts and conflicting evidence, state her interpretation of the facts

10   and evidence, and make findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  In

11   regards to babysitting, the ALJ failed to do so and instead simply stated plaintiff's babysitting

12   was inconsistent with the doctor's opinion.  The Commissioner defends the ALJ's reliance on

13   babysitting but does so without citing to anything in the record that supports the ALJ's

14   rationale.  This is because there is little in the record that shows plaintiff's babysitting involves

15   standing or walking for more than two hours.  Rather, the record shows plaintiff testified she

16   babysat but stopped because she "wasn't able to provide the kids with what, actually, they

17   needed," AR at 49, she can briefly watch her three year old "no longer than an hour," and she

18   can only "briefly" play with her child.  AR at 55.  Plaintiff's husband testified at her hearing

19   that over the last nine to twelve months, plaintiff has gotten worse and is alone with her young

20   children only "seldom."  AR at 72.   Thus, the record shows there is nothing inconsistent with

21   plaintiff's babysitting, and Dr. Gaffield's testimony that she could stand or walk for less than

22   two hours at a time.

23   Fourth, the ALJ rejected Dr. Gaffield's opinions on the grounds he "did not review any

24   treatment records and the claimant was holding onto doorframes and furniture for support at

her evaluation.  Other examiners did not observe this behavior, which indicates the claimant

was exaggerating her physical problems at the evaluation with Dr. Gaffield."  AR at 29-30.

The ALJ's reasoning misconstrues Dr. Gaffield's findings and opinions.  Dr. Gaffield found

that plaintiff "held onto the walls and furniture to maintain her balance."  AR at 458.

However, he did not opine plaintiff's standing and walking limitations were based on a lack of

balance.  Rather he stated standing and walking limitation were due to her "obesity and her

knee condition" which he diagnosed as "knee pain and weakness," and "lower back pain

secondary to knee status."  AR at 460.  Accordingly, as Dr. Gaffield's opinion about how long

plaintiff could stand or walk was not based on his observations about her balance, the ALJ

erred in relying on those observations to discount the doctor's opinions.

     In sum, the ALJ erred in rejecting Dr. Gaffield's opinions.  The error was not harmless

because it resulted in a residual functional capacity determination that failed to include all of

the limitations Dr. Gaffield assessed.[4]  In determining a claimant's RFC, an ALJ must assess

all the relevant evidence, including medical reports, to determine what capacity the claimant

has for work.  *See* 20 C.F.R. § 416.945(a).  Similarly, hypothetical questions that an ALJ poses

to a vocational expert to determine what work a claimant can perform "must include 'all of the

claimant's functional limitations, both physical and mental' supported by the record."  *Thomas

v. Barnhar*t, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71

(9th Cir. 1995)).  Here, the ALJ found plaintiff had the ability to perform light work, and the

vocational expert testified there were light and sedentary jobs plaintiff could perform.  This

---

[4] Because the ALJ's erroneous assessment of Dr. Gaffield's opinions undermine the ALJ's residual functional determination, the Court need not discuss further plaintiff's second issue on appeal:  Whether substantial evidence supports the ALJ's conclusion that the Plaintiff has a residual functioning capacity to perform light work, but with the ability to stand two hours in an eight hour workday.

REPORT AND RECOMMENDATION - 10

stands in contrast to Dr. Gaffield's opinions which indicate plaintiff might have the RFC to perform either less than light or less than sedentary work.

Plaintiff contends that the ALJ's errors call for a remand with direction for an award of benefits. Dkt. 16 at 3. A Court should remand a case for an award of benefits only in "rare circumstances." *Treichler v. Comm'r of Soc. Sec.*, No. 12-35944, 2014 WL 7332774 at * 8 (9th Cir. Dec. 24, 2014). In determining the scope of remand, a Court should ask if further proceedings would be useful, whether the record has been fully developed and whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules. *Id.* Here, the case requires further proceedings. Even if the Court were to accept Dr. Gaffield's opinions, the Court lacks any vocational expert testimony that would establish whether there are or are not jobs plaintiff could perform in the national economy. Rather than guessing, the case should be remanded for further factual assessment and expert testimony.

2.    *Grace Grime Chapman, FNP*

On May 17, 2011, Ms. Chapman completed a Department of Social and Health Services ("DSHS") form opining that plaintiff could stand 0 hours in a work day; sit for 4-6 hours; and lift 10-20 pounds occasionally, and 5-10 pounds frequently. AR at 426. The ALJ rejected Ms. Chapman's opinions on the grounds that she opined "the impairment was expected to impair work for only six months," Ms. Chapman is not an acceptable medical source,[5] and Ms. Chapman "did not provide any rationale or cite any objective signs or findings in support of the limitations she opined." AR at 426.

---

[5] Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not nurse practitioners. 20 C.F.R. §§ 404.1513(a)(1) and (3); 416.913(a)(1) and (3).

Plaintiff contends the reasons the ALJ gave were erroneous because they were not "specific and legitimate." Dkt. 16 at 7. An ALJ must give germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Plaintiff is correct that an ALJ may not reject the testimony of Ms. Chapman simply because she is not a medical source. An ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96–6p, 1996 WL 374180, at *2.

However, plaintiff is incorrect about the other reasons the ALJ relied upon to discount Ms. Chapman's opinions. Ms. Chapman opined that "the patient's condition is expected to impair work function for 6 . . . months, reeval after specialist visit." AR at 426. The ALJ was entitled to rely on Ms. Chapman's own view that the severity of plaintiff's limitations might not persist for more than six months. *See* 20 C.F.R. § 404.1509; 42 U.S.C. § 423(d)(1)(A) (disability means inability to perform work by reason of an impairment that can be expected to last for a continuous period of not less than 12 months).

It was also proper for the ALJ to discount Ms. Chapman's opinions on the grounds she failed to provide any rationale or cite any objective signs or findings in support of her opinions. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may discount a medical opinion that is brief, conclusory, and inadequately supported). Plaintiff concedes Ms. Chapman "did not provide objective findings or rationale" but argues "her treatment notes provide ample information of that sort." Dkt. 16 at 9. The argument is flawed. Plaintiff points to portions of Ms. Chapman's treatment records indicating that plaintiff has knee problems. But none of these records contain an opinion that plaintiff can stand 0 hours and has the lifting

limitations described in Ms. Chapman's DSHS report; further, none of the records contain any discussion detailing how plaintiff's impairments would even support such a finding.

Accordingly, although the ALJ's assessment of Ms. Chaman's DSHS opinion is not error free, the assessment should be affirmed because the ALJ gave at least one valid reason that is supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

B.     The ALJ's Step Three Findings as to Plaintiff's Mental Impairments

At step three, the ALJ found plaintiff's mental impairments—anxiety disorder and affective disorder— did not meet the requirements of a listed impairment. AR at 22. The listings describe specific impairments that are considered "severe enough to prevent an individual from doing any gainful activity regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant whose impairments either meet or equal a listing is presumptively disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).

In determining whether a claimant's mental impairments meet a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present.[6] 20 C.F.R. § 404.1520a. To meet listing 12.04, affective disorders, or listing 12.06, anxiety related disorders, a claimant who satisfies the paragraph A criteria must meet at least two of the following paragraph B criteria:

---

[6] Plaintiff does not contend the ALJ's paragraph A findings are erroneous.

REPORT AND RECOMMENDATION - 13

1      1.  Marked restriction of activities of daily living; or

2      2.  Marked difficulties in maintaining social functioning; or

3      3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4      4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, App. 1, § 12.04, 12.06.

Plaintiff contends the ALJ erred in assessing her mental impairments at step three. Specifically, she argues the "ALJ declined to provide a basis for her findings for each of the B criteria – activities of daily living, social functioning and ability to maintain concentration, pace and persistence." Dkt. 16 at 12.  When evaluating mental impairments, the ALJ must follow a "special psychiatric review technique" and document her findings and conclusions in her decision.  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F. 3d 721, 725 (9th Cir. 2011) (citation omitted) ("Specifically, the written decision must incorporate the pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas ...") (citations, emphasis, and internal quotation marks omitted).

As required by *Keyser*, the ALJ in this case documented her application of the psychiatric review technique by referring to the psychiatric review technique ("PRT") evaluations performed by Cynthia Collingwood, Ph.D. and Michael Regrets, Ph.D.  AR at 22. The ALJ adopted the doctors' opinions that "claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration (3A7; 7A8)."  *Id.*   Additionally the ALJ found:

> the doctors' opinions about the "paragraph B" criteria accurately reflected the record which showed "the claimant is independent with self-care and provides care for her teenage son and three-year old daughter.  She is able

1
2
3
4
5

to prepare meals, do housework, and attend healthcare appointments. The claimant babysat her two young nephews for four or five months in 2011. She has alleged substantial difficulty leaving her residence but as noted above is able to attend scheduled appointments. Examiners typically described the claimant as pleasant and cooperative. On mental status examination, the claimant spelled 'world' forward and backward and followed complex instructions (18F4). She is able to complete tasks. The record shows no episodes of extended decompensation for extended period.

6   AR at 23.   In short, the ALJ fulfilled her obligation at step three and incorporated the pertinent

7   PRT findings and conclusions of doctors Collingwood and Regrets, and included a specific

8   finding as to the degree of limitation in each of the functional areas as required by *Keyser v.*

9   *Comm'r, Soc. Sec. Admini.*, 648 F. 3d at 725 (quoting 20 C.F.R. § 404.1520a(e)(4)).   The

10   ALJ's step three findings as to plaintiff's mental impairments are thus affirmed.

11                                       VIII.   CONCLUSION

12           For the foregoing reasons, the Court recommends that this case be REVERSED and

13   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

14   instructions.   A proposed order accompanies this Report and Recommendation.

15           Objections to this Report and Recommendation, if any, should be filed with the Clerk

16   and served upon all parties to this suit by no later than **February 27, 2015**.   Failure to file

17   objections within the specified time may affect your right to appeal.   Objections should be

18   noted for consideration on the District Judge's motion calendar for the third Friday after they

19   are filed.   Responses to objections may be filed within **fourteen (14)** days after service of

20   objections.   If no timely objections are filed, the matter will be ready for consideration by the

21   District Judge on **March 6, 2015**.

22   //

23   //

24   //

REPORT AND RECOMMENDATION - 15

1          This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2    seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3    assigned District Judge acts on this Report and Recommendation.

4          DATED this 13th day of February, 2015.

5

6                                                 *James P. Donohue*

7                                          JAMES P. DONOHUE
                                           United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 16